We're next hearing Harden v. Byers, number 227054, and it appears that counsel is ready to proceed. My apologies, Your Honor. No problem. My name is Carson Smith. I'm counsel of record for appellant Timothy Byers. May it please the court. This appeal is centered on the proper qualified immunity procedure and framework in a jail sex case. Now, that is a more difficult analysis given that Graham v. Logan County is a cornerstone case, especially as respects to consent defense. But Graham did not involve a qualified immunity analysis and framework. And in further, Graham is an outlier case in terms of the extreme nature of its facts and evidence there. So Graham having those two components, the district court in attempting to draw from and yoke to Graham is akin to trying to plug a two pin or excuse me, a three pin electrical plug into a two pin outlet. So as illustrated by the district court opinion in this circuit, I think it's a fair and open question of how exactly Graham structurally connects with the jail sex case. That is to proceed first within the qualified immunity framework. Here, the district court did not conduct a proper analysis where plaintiff must first show some aspect of coercion with non-consent in order to satisfy the first prong of the qualified immunity analysis. Instead, the district court focused solely on consent, which is an inward subjective element only. To wit, the district court states, as there is some evidence, the contact is not consensual. Defendant Byers is not entitled to qualified immunity. That's appellant's appendix at 744. Now, turning to Brown v. Flowers, which I think illuminates the qualified immunity track some from Graham. Brown states at 1186, we have long held that non-consensual coerced sex between a jailer and an inmate violates the Constitution. Brown further states, quote, we conclude that Flowers violated Brown's constitutional right to be free from sexual abuse when he coerced Brown into having sex without her consent. So in this light, your honors, I see coercion not as an extra element, legally speaking, but as just the manifestation outwardly of non-consent. And so those are two complementary but both necessary aspects that must be proven by the plaintiff in a jail sex case faced with a qualified immunity hurdle at the outset. And I think it's also important that that outward aspect, coercion, syncs up with the focus of the second prong of the qualified immunity analysis, which is clearly established. Some bedrock articulations in this regard, quote, for a constitutional right to be clearly established, its contours must be sufficiently clear. So not just the core, but the contours. Also, the inquiry, quote, is whether it would have been clear to a reasonable official and the defendant's position that his conduct was unlawful in the situation he confronted. So as we hear from that articulation, the focus is on what the officer knows, what's observable to the officer in the very moments that the event is unfolding. Well, he knew that engaging in the sexual relations was unlawful, didn't he? Certainly he knew that it was highly inappropriate. It was unlawful under Oklahoma criminal law, yes, your honor. But the clearly established prong is focused on the constitution or statutory right as been articulated over the last 10 years. So he knew it was highly inappropriate, unlawful criminally, but certainly didn't know it was unlawful under the constitution, under the contours that played out here. I would submit the district court focused too much on consent to the exclusion of coercion because we need both subjective inward aspect and we need the complementary corollary, which is the outward objective aspect of coercion. Therefore, plaintiff has the burden to show some coercion for prong one, as stated by Brown v. Flowers. So wasn't there evidence of that in the record? The district court did not even really use the term coercion. It didn't find evidence of coercion. Well, apart from words used, there wasn't there evidence of that in the record. In fact, the district court did find that Ms. Works said, I don't think so, when Mr. Byers told her to undress. And then that made consent a disputed issue fact. And that's a good question, Your Honor. I understand that question, the way it's framed. However, the coercion has to be coerced sex. How is that not evidence of coercion? Well, because when you… You're at least trying a reasonable inference. I mean, we're on summary judgment. And we're also on interlocutory appeal. I take it you don't dispute that finding, do you? I don't dispute that finding, no, Your Honor, because as the appellee stated, those findings are locked in stone for this appeal. However, we can't home in on that finding to the exclusion of the entire record. I think what's also critical is Ms. Works testified she did not recall conveying any refusal to sex. And so she may have refused. She said, I don't think so. Right. She didn't think she conveyed refusal for sex. And so to me, that is a crux of the outward aspect of coercion that's missing here. That even if you take the instruction to drop your pants, that is short of and not tantamount to sex. I realize it's a prefatory step, and I'm not minimizing that in a moral light. But that is not a constitutional violation in terms of coercing sex, especially when she testified, I don't think I conveyed my refusal to sex to Mr. Byers. Let me ask you this. So was he asked in his deposition any questions that might have been seeking his position on whether he coerced her or forced her? Your Honor, I don't recall exactly. There were some questions asked, but Mr. Byers took the Fifth Amendment to all of those questions. Right. And so, I mean, and part of the problem here is whether someone consented and whether someone was coerced may have some overlap. Certainly, I agree, Your Honor. And that's why I talk about them as complementary plugs. Again, I would go back. So some evidence that might indicate a lack of consent could also indicate coercion. I think that's true, Your Honor. If we look at the Brown case, for instance, the Brown court focused on Ms. Brown crying during the sex. As evidence of her lack of consent that outwardly indicated to Mr. Flowers, she didn't consent. We don't have such a corollary or analog here. We have everything that's subterranean that the district court focused on as inward and not knowable to Mr. Byers. So let me ask you this. I mean, you agree that because he took the Fifth Amendment that an adverse inference can be drawn against him. I do agree with that general statement, Your Honor. I think it's a little murky from the record how much weight the district court placed on that adverse inference. To properly weigh that inference, the court would need to assess the totality of the evidence and see where there were gaps in order to kind of weigh and place significance on that. Okay, so let's say we have an adverse inference, but we're not going to give it great weight. And we have an officer in a position of authority. Someone in a position of authority telling someone to do something could indicate coercion. Do you agree with that? I'm not asking you to agree that it slams the door on your argument, but just as a general matter. I agree with the concept, but I'd like to run that to ground a bit. So someone in a position of authority instructing some inferior to do an act, I don't think alone is coercion. Excuse me. Let's take the example of Mr. Byers the next day asking another inmate who was a trustee mop the kitchen floor. Okay, go ahead. If that inmate did that, I don't think that would be coercion just because he was in a superior position. Now, if the inmate said, I'm not feeling it today, I don't want to. And Mr. Byers said, if you don't do it, you lose your trustee status. Or if you don't do it, I'm calling the sheriff. Then that evolves into coercion because he's overcoming some perceived resistance or reluctance. Okay. So what if we do that? What if we say these facts exist and we're not ascribing any particular weight to any of them, any single fact. But we say that we had an officer. He was in a position of authority. We had a female inmate. She understood that he could make her life difficult in jail. We have him taking her out of her cell by herself in the middle of the night. We have him saying, drop him. And her saying, I don't think so. And him pressing the issue and her ultimately complying. I mean, if we take the facts in a light most favorable to the plaintiff, don't you have a problem on coercion there? I think it's close, Your Honor. I'm not going to stand before you and say it's not close. However, if we look at the case law and we focus on the second prong of qualified immunity clearly established, the only real evidence of coercion would be being in the same room with Ms. Works. But that's just kind of a metaphysical issue because for sex to play out, two people have to be in the same room and occupy the same proximity. And so if we're going to allow that to stand in for coercion, then that would be satisfied in every— It's more than just in the same room. It's in the same room when everybody else is locked down, and therefore it's really pretty secure and pretty private. That's the real essence of it. I understand that, Your Honor. However, if that was proper evidence of coercion, then that would have been the case in Graham when she was in solitary confinement. That would have been the case in Brown when she was up in the control tower. But neither of those courts analyzed that as coercion. They looked at, in Brown, quid pro quo, and the crying was coercion. And in Graham, there was an utter lack of coercion, even though she was in solitary confinement with two men. So I don't think that factual circumstance jibes with the analysis in this circuit on coercion. I think there needs to be something more. Counsel, it seemed from your brief that you were putting a lot of emphasis on your blatant contradiction argument, and you haven't said anything about that this morning. Are you still relying on that? Thank you for that, Judge. I think we rely on that insofar as the district court focused on plaintiff testifying she felt unable to leave when Mr. Byers was in the room, or the district court actually said she was unable to leave the room because Byers was in the way, which is a physical entity. But using Scott v. Harris and that exception, the video shows Mr. Byers was only in the room for a small period of time. She was in the room herself most of that period. And so there was no physical inability. Again, what we have there is a felt and a subjective feeling that's not observable to the reasonable officer as Mr. Byers. But on the critical fact issues, particularly of consent versus non-consent, you're not arguing that the video blatantly contradicted what the district court found. On the one point that Ms. Works could not leave because Byers was in the way, I believe the video does blatantly contradict that finding. Well, he was standing in the doorway when she was there. When she was there, but he was only there for a fraction of the time. And also, I'd like to reserve some time, and I'll just mention that the burden of proof was shifted markedly in this case. The district court used the phrase beyond reasonable doubt, which admittedly is not proper for qualified immunity nor for any summary judgment civil case.  Could you speak up a little bit? Make sure that the microphone is near your face, please. Start again. Good morning, your honors. May it please the court. For plaintiff appellee Savannah works. Brown held as to Kong to have qualified immunity. Looking at facts that occurred in 2016, which is prior to the facts in this case, that there was that it would have been clear to an officer in the situation that coerced and non consensual sex with someone in a jail violates the Constitution. Brown is materially indistinguishable from this case. It is a 2020 case, though, right? The decision itself is 2020, but it held that in 2016 it would have been clear to an officer. Now, I know that there's that reach back reference in the case, but I take it still that you're arguing that it's factually analogous. And I wonder if that cuts against the basic principle that the cases have to put the defendant on notice at the time of the event. Right, your honor. Thank you. Brown itself would not is not part of what I was known because Brown didn't exist at the time. But Brown looked at the same time period in 2016 and said that the law in that case was clearly established. So Brown did the same analysis we're asking this court to do today, which is to say at that time period, what would a reasonable officer would have known? What's your others? Do you have any other case besides Brown for clearly established? So Brown looked back at decades of this court's case law, including Castillo, Barney and Smith, and said that basically when we were talking about sex and sexual harassment between someone who is incarcerated or in a jail and someone who has power over them, it's clear. You don't need a case on identical facts. It's just clear that that's not OK. And in addition to that line of this court's cases, Officer Byers knew that he was violating Oklahoma law. The Oklahoma legislature has said that in this circumstance, it's impossible to have consent because of the inherent power dynamics. And so as a matter of law, sex is statutory rape. He was trained not only on Oklahoma law, but also the jail's policy, which similarly prohibited sex in these circumstances. So in addition to the case law, there are these other facts that reflect the clarity of the law in these circumstances. And Officer Byers, frankly, no reasonable officer and no reasonable person would have thought that you can have sex with someone without consent in or out of a carceral setting. But the setting is important here because this court in Brown and in earlier cases, such as Smith, acknowledged that the power dynamics make it really difficult to say that someone can consent in these circumstances. Now certainly, there is an outlier case, which I believe is how my friend on the other side described Graham, where there's overwhelming evidence of consent. And in those circumstances, a defendant is entitled to summary judgment if really the facts support that no reasonable jury could find that there's no consent. Can I just ask you, I understand the power dynamics argument, but do we need to use it to affirm this case? No. This court doesn't need to say anything about the inherent power dynamics because regardless of those dynamics, there was the outward manifestation of consent, which my friend on the other side said was lacking here. When Byers ordered Works to drop her pants, she told him, I don't think so. And when he repeated that command, she told him, I don't want to do this. So those facts in and of themselves are sufficient to show that she didn't consent. And not only that, but she told him she didn't consent. Can I just ask on that point, counsel in briefing and this morning is drawing a distinction between coercion and consent. In fact, in the brief says there's no evidence of coercion. At least that's what it says at pages 13 through 14. Could you address that argument? I think that coercion and consent are best understood as two sides of the same coin, which is similar to I think what Judge Carson was suggesting a few moments ago. In other words, if there is coercion, it makes it very difficult to find that there is consent in the case. And so someone can be coerced into sex, meaning that they are not consenting or it is impossible for them to consent under those circumstances. So the inquiry the district court conducted here is the appropriate one. It looked at all the facts in the record, including the video, and it said, what would a jury, what could a jury think as to consent and coercion? And it said, frankly, that there's facts suggesting that there was no consent and that there was coercion. And it acknowledged that the defendant pointed to a few discrepancies, potentially, and said, even if those are real, this is still a factual question that a jury needs to resolve. And so the district court did the appropriate analysis on those problems of qualified immunity consistent with Brown and decades of this court's case law. And no reasonable officer in this situation, given the training and, frankly, given Ms. Works' double protestations that she didn't want to do it and that she didn't think, well, I don't think so, which are just two ways of saying no. No reasonable person, no reasonable officer would have thought it was appropriate to have sex in these circumstances. And we would ask that this court affirm the district court. Tell me what you think about this. I wonder, looking at the cases, if this idea of coercion didn't take on a life of its own as the years progressed, because it seems to me that it doesn't matter if it was coerced or not coerced. If there was no consent, you would still have the violation. I think consent, Your Honor, is the touchstone. And I think that the question of coercion comes in sort of an earlier line of this court's case law, where it was rejecting the notion that there had to be a physical struggle, right, sort of going away from the idea that physical coercion needed to be in play. And then it says, no, we look at really all of the facts in the situation. And what we're asking, what the central inquiry is, is did this person consent to sex? And the district court looked at all those facts and said a jury could find that the answer is no. So yes, I think that there is nothing particularly magic or special about the idea of coercion, except to say that it is relevant when we are looking at these settings in jails and prisons. And you don't need to use that here, but it is something that in all of this court's cases, it has noted that there are these inherent power dynamics. And that when people are ordered to a place and ordered to do something, that is not something that they're free to ignore. And that's consistent with testimony in this case, where Ms. Works said, quote, whenever you're in jail where you don't know anybody, they have all the power over you. They can do whatever they want to you. And do you agree that the district court in this case does appear on a few occasions to have applied the wrong legal standard or seemingly so? Your Honor, I think that the entirety of the district court's opinion is best read as frankly just applying the ordinary summary judgment standard. When the court said a reasonable doubt, it wasn't using that phrase as a term of art. Obviously, this is a civil case and not a criminal case. What it was saying, I think, is the equivalent of what could a jury have found. And looking at all the evidence, there is no jury that could have—no reasonable jury could have—sorry, that a reasonable jury could have found that there was no consent. And so it doesn't meet the standard in Graham. Graham is the outlier case, again, that says, you know, you can get past summary judgment as a defendant in these circumstances. That's why the court used the language from Graham about overwhelming evidence. But it wasn't using these terms to say this is the standard, but more to say it doesn't reach that point. And because there are disputed facts, we have to send this to a jury. Well, what if we thought that the district court erred by using those phrases, beyond a reasonable doubt, and overwhelming evidence? I mean, it's one thing to say, well, what the court really meant was. But those words were used in the opinion, and you don't see those very often in summary judgment decisions. So I guess my question to you is let's assume that that was error. Then what? Yes. So assuming that was error, it's a legal error and not a factual error. And this court, of course, has jurisdiction de novo to review any factual errors. So I think the appropriate course would— De novo review to— I'm sorry, for legal errors, yes. Thank you, Your Honor. And so I think the appropriate thing to do, if that's what this court holds, is to say the district court used this language. It may have been using the wrong legal rule. It doesn't change the outcome of this case because we, applying the correct legal rule, the normal summary judgment standard, agree with the— we take the district court's findings of no consent and say, mapping on the normal summary judgment standard, a jury could find there was no consent. And therefore, it doesn't change the outcome. So it sounds a little harmless error-like. Right. Yes. It's very clear from the entirety of the district court's opinion that any error, should this court think there is any, would be harmless. And sending it back to the district court would be sort of a waste of everyone's resources. The district court would then just excise those couple of phrases from its opinion, reissue the same opinion, and then the defendant could take another interlocutory appeal and would be right back here. So I think if the court is concerned about those couple of lines, the appropriate course is to correct that legal error but nevertheless affirm the denial of summary judgment. What about counsel's argument that the video blatantly—I think the argument is that it blatantly contradicted the notion that Ms. Works could not have left the laundry room. How do you respond to that? Yes, so today I heard a clarification. In other words, they're not saying that the video blatantly contradicted the overarching determination that the district court made that a jury could find no consent, but rather just one sort of fact that the district court found on the way to that determination was contrary to the video. First of all, I don't think that's accurate. There's nothing in the video that blatantly contradicts the suggestion that she didn't feel free to leave. She wasn't saying necessarily there was no physical way I could leave. She was saying he was standing between me, he had power over her, he had commanded her to go to that room. So again, I don't think that that meets the stoppy Harris standard. But even if it did, that's just one fact among many that we detail in our brief and that the district court detailed that are suggestive of no consent and that a jury could look at and find that, in fact, this sex was coerced and not consensual. It seems to me that the oppression she's arguing, the coercion that she's arguing, is his authority. And that authority didn't vaporize just because he stepped out of the room. And if she went into the room in the first place because of his authority, if she were to escape from the room, she would still have the fear that his authority would give her adverse consequences. That's exactly right, Your Honor. And that's the way this court talks about authority in Brown and the decades of this court's case law. It's not necessarily just as to one particular fact, but it imbues the entire interaction. Yes. If there are no further questions. Thank you, Your Honor. Thank you, counsel. We have some rebuttal time. Your Honors, I first want to address the comment that Ms. Works-Dovely said, I don't want to do this, but the appellee's brief makes clear that was not found by the district court and an appellee admits as much in a footnote to her brief. Is it in the record? It's not in the district court's findings. Is it in the record? It was in the summary judgment record, but not part of the district court's findings for the qualified immunity question, Your Honor. And the idea of using just consent, if we focus on consent, is it departs from the language that's used in Graham, not only the language, but the focus in Graham of what the two officers knew and what Ms. Graham relayed to them. It does violence to that focus. It departs from the language of Brown v. Flowers, non-consensual, coercive, and also it leaves the entire qualified immunity question without a connector valve between consent, which is only subjective, and then the second prong, clearly established, which is objective, focusing on the officer. So that's why consent is integral and utterly lacking here. Thank you, counsel. Thank you, Judge. The case will be submitted and counsel are excused. Thank you for your arguments.